**NATIONAL POSTAL UNION and National Alliance of Postal & Federal Employees et al.**

v.

**Winton T. BLOUNT et al.**

**Civ. A. No. 3139–70.**

United States District Court, District of Columbia.

March 15, 1972.

Fred W. Drogula, Washington, D. C., for plaintiffs.

David J. Anderson, Dept. of Justice, Mozart G. Ratner, Michael H. Gottesman, Jules Bernstein, Donald M. Murtha, Washington, D. C., for defendants.

Before FAHY, Senior Circuit Judge and SMITH and ROBINSON, District Judges.

Memorandum Opinion and Order

PER CURIAM.

This three-judge statutory District Court was convened pursuant to Sections 2282 and 2284 of Title 28 of the Judicial Code of the United States to consider the challenge of plaintiffs [1] to the constitutional validity of the Postal Reorganization Act,[2] herein the "Act," particularly Section 10(a) thereof. Defendants are the Postmaster General of the United States and seven national craft unions which have been for some time the national exclusive bargaining representatives of postal workers selected under elections held pursuant to Presidential Executive Orders granting the right

---

1. The original plaintiffs were two independent national industrial unions of postal employees and local affiliates, together with a number of individual postal employees. The national unions were the National Postal Union and the National Alliance of Postal and Federal Employees, herein "Alliance." Some changes among plaintiffs during the course of the litigation do not affect the life of the controversy. Alliance has remained a plaintiff throughout.

2. Public Law 91–375, 84 Stat. 719.

of representation and bargaining as prescribed in those Orders.[3] The Act now confers upon the postal employees a statutory right of collective bargaining and in other comprehensive respects provides for a reorganization of the postal service of the United States.

■ The constitutional challenge of the complaint is primarily that Section 10(a) of the Act, in granting during a transitional period [4] the right of exclusive representation in collective bargaining with defendant Postmaster General to the defendant labor organizations, which had been successful under elections last held under the terms of the Executive Orders, denies plaintiff unions and the individual plaintiffs the equal protection of the laws.

Deeming the Act probably constitutional this court denied plaintiffs interim injunctive relief which would have placed Section 10(a) of the Act out of operation. Accordingly, under its provisions defendant unions and the Postmaster General began the process of collective bargaining as to wages, hours and working conditions as authorized by the terms of the Act. The result was that a collective bargaining agreement, herein the "Agreement," was entered into between the Postmaster General and defendant unions under date of July 20, 1971.

Thereafter plaintiff Alliance, as permitted, filed a First Amendment to the Complaint. This Amendment incorporated the original Complaint and added an attack on two Articles of the Agreement as invalid under the Act itself. Plaintiffs challenge Article XV as inval-

idly excluding Alliance from the processing of grievances and Article XVII, Section 6, as capable of excluding it from addressing new employees in an effort to expand its membership. The latter provides:

*SECTION 6. UNION PARTICIPATION IN NEW EMPLOYEE ORIENTATION. During the course of any pre-employment orientation program for new employees, a representative of the Union representing the craft or occupational group to which the new employees are assigned shall be provided ample opportunity to address such new employees, provided that this provision does not preclude the Employer from addressing employees concerning the same subject.*

Thereafter, on application of plaintiff Alliance this court on September 23, 1971, entered a temporary restraining order against the enforcement of Articles XV and XVII of the Agreement. On motion of defendant unions to dissolve it, and of the defendant Postmaster General to amend it, on December 1, 1971, we vacated our restraining order of September 23, 1971, except as to Section 6 of Article XVII, as to which we provided that our order of September 23, 1971, would remain in effect pending a further ruling by the court.

In the meantime the case came on for argument on November 23, 1971, on cross motions of plaintiffs and defendants for summary judgment, and the case is now before us on these motions for final decision.[5]

■ We remain of the view that the Act, including Section 10(a), is constitu-

3. Exec. Order No. 10,988, 27 Fed.Reg. 551 (1962) and Exec. Order No. 11,491, 34 Fed.Reg. 17605 (1969).

4. The transitional period referred to includes the period of one year from enactment of the Act during which the reorganization of the postal service would occur, that is, to August 12, 1970. The transitional period should also be considered, insofar as the collective bargaining provisions of the Act are concerned, to be the period prior to the establishment of bargaining units and elections of rep-

resentatives under the provisions of the National Labor Relations Act, as provided in Chapter 12 of the Act, or such earlier action as might be taken by the Labor Board defining rights and obligations of the Postmaster General, the labor organizations representing postal employees, and their members.

5. The National Labor Relations Board petitioned to intervene and counsel for the Board was heard in argument on November 23, 1971, but the petition was not acted upon by the court.

tional. In substance our position is that when Congress thus guaranteed for the first time to the postal employees a statutory right of freedom of choice of representatives for purposes of collective bargaining, it was not an invidious discrimination during the transitional period to accord the right of exclusive representation to the defendant unions. In the aftermath of a very serious postal workers strike, Congress built into the Act a transitional bargaining mechanism designed smoothly to incorporate with some modification the status quo in labor representation among the postal employees. While this may be open to criticism as an inaccurate reflection of the appropriate bargaining units, resolution of that question is reserved by the Act to the National Labor Relations Board. For the interim period, the goal is a reasonable method of transition from limited postal worker participation to full-blown labor management relations characteristic of privately-owned enterprise.

■ Accordingly, we have declined to grant plaintiffs the right to participate in negotiations under Section 10 of the Act with the Postmaster General, and to process grievances of its members, except as they may be entitled to do under Section 9(a) of the National Labor Relations Act (N.L.R.A.), 29 U.S.C. § 159(a).

■■ The plaintiff Alliance's rights to address new employees during the interim period, however, stands on a different footing. Defendants maintain that this court lacks jurisdiction to pass on this portion of plaintiffs' complaint. An attempted exclusion of Alliance from seeking new members is arguably an unfair labor practice proscribed by § 7 and § 8 of the N.L.R.A. Ordinarily, the court would not take any decisional action with respect to that matter, in deference to the primary jurisdiction of the NLRB in developing and maintaining a uniform national labor relations policy. *See, e. g.,* Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). However, the present Act's two-stage congressional scheme does not indicate to us that Congress intended exclusive primary jurisdiction to lie with the NLRB now to interpret Section 10 of the Act, which is the authority that allows, and defines the scope of, the interim Agreement which was entered into by defendant unions not chosen by the employees under the procedures of the N.L.R.A. We construe Section 6 of Article XVII of the Agreement as not to preclude plaintiff Alliance, on request, from being accorded by defendant Postmaster General reasonable opportunity, commensurate with the opportunity accorded defendant unions, to address new employees to seek new members during the transitional period. We accordingly modify our restraining order of September 23, 1971, and our order of December 1, 1971, by providing now that defendants, their agents, servants, employees and attorneys, and all persons in active concert and participation with them be, and they hereby are restrained from implementing or enforcing said Section 6 except as above interpreted by this court. We take this position because we think it would be inconsistent with the intent and purpose of the Act to construe said Section not to afford Alliance a fair opportunity in this manner to seek to maintain a healthy life during the transitional period, enabling it more fully to compete for ultimate recognition as exclusive representative in appropriate units before the National Labor Relations Board in future proceedings authorized or required by the Act. To preserve this opportunity in Alliance does not in our opinion invalidly affect the present collective bargaining rights of defendant unions under the Agreement.

Subject to compliance with the above position of the court with respect to the subject matter of Article XVII, Section 6, of the Agreement, the motion for summary judgment of the defendants is granted, and of the plaintiffs is denied.

It is so ordered.