NATIONAL ALLIANCE OF POSTAL AND FEDERAL EMPLOYEES et al., Plaintiffs,

v.

E. T. KLASSEN, Individually and as Postmaster General of the United States, et al., Defendants,

and

National Association of Letter Carriers, AFL–CIO, Defendant-Intervenors.

Civ. A. No. 2143–73.

United States District Court, District of Columbia.

Jan. 22, 1974.

748

Fred W. Drogula, Washington, D. C., for plaintiffs.

Irving Jaffe, Acting Asst. Atty. Gen., Harold H. Titus, Jr., U. S. Atty., Harland F. Leathers, David Epstein, Attys., Dept. of Justice, for defendant Postmaster General of the U. S.

Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Abigail Cooley, Asst. Gen. Counsel for Special Litigation, Alan Banov, Atty., Washington, D. C., for defendant Peter G. Nash.

Mozart G. Ratner, Washington, D. C., for intervenors.

CHARLES R. RICHEY, District Judge.

## I. INTRODUCTION

Plaintiffs, a postal labor union [1] and several individual postal workers, have brought suit in this Court against the Postmaster General of the United States and the General Counsel of the National Labor Relations Board, hereinafter NLRB or Board, to enjoin the operation and enforcement of Sections 10(a) and 1202, 1203 of the Postal Reorganization Act of 1970, 39 U.S.C. § 1201 et seq., as applied by the Postmaster General to confer exclusive recognition upon several national craft unions. The complaint also seeks a declaratory judgment to the effect that the statute as applied is unconstitutional, the statute did not authorize the Postmaster General and the craft unions to negotiate and execute the collective bargaining agreement of July, 1973, and the conduct of the Postmaster General and the craft unions in executing the July, 1973 bargaining agreement constituted an unfair labor practice pursuant to Section 8(a)(2) of the National Labor Relations Act, 29 U.S.C. § 158(a)(2). Plaintiffs finally ask for a permanent injunction directing the Defendant Postmaster General to enforce the provisions of Section 8(a)(2) of the National Labor Relations Act (NLRA), *supra*. Plaintiffs assert that this Court has jurisdiction of the claims for relief stated in the Complaint by virtue of 28 U.S.C. §§ 1331, 1361 and 2201, and Title 11, D.C.Code § 521. However, Plaintiffs have applied for the reconvening of the Three Judge District Court convened in National Postal Union v. Blount, 341 F. Supp. 370 (D.D.C.1972) to hear their claims for relief. The convening of a Three Judge Court is sought pursuant to 28 U.S.C. §§ 2282 and 2284. Defendants

1. Plaintiff National Alliance of Postal and Federal Employees (Alliance) has approximately 40,000 postal workers in its membership.

have opposed both this request and Plaintiffs' Motion for a Preliminary Injunction, and they have also moved for the dismissal of the Complaint or Summary Judgment.

The Court has before it Plaintiffs' application for the convocation of a Three Judge Court, their Motion for a Preliminary Injunction, Defendants' Opposition to the foregoing, and Defendant General Counsel's Motion to Dismiss the Complaint or, in the alternative, for Summary Judgment. For the reasons set forth in this Memorandum Opinion, the Court will deny Plaintiffs' Motions and grant that of· Defendant General Counsel in the following manner:

1. Partial Summary Judgment is granted against Plaintiffs' constitutional claim that Sections 10(a), 1202 and 1203 of the Postal Reorganization Act were construed and applied by the Postmaster General to permit the exclusive representation of postal workers by the transitional bargaining representatives designated by Congress in Section 10(a) of the Act beyond the expiration of the transitional bargaining period and thereby denied Plaintiff union and the individual Plaintiffs the equal protection of the law;

2. Plaintiffs' claim that the Postmaster General's decision to accord exclusive recognition to certain craft unions pursuant to Chapter 12 of the Postal Reorganization Act, 39 U.S.C. § 1201 et seq., constituted an unfair labor practice under § 8(a)(2) of the National Labor Relations Act, 29 U.S.C. § 158(a)(2), is dismissed with prejudice;·

3. Plaintiffs' claim that the Postmaster General committed an unfair labor practice pursuant to § 8(a)(2) of the NLRA, supra, by negotiating new collective bargaining agreements with national craft unions during the pendency of numerous representation petitions filed with the National Labor Relations Board in 1971 and 1973 is dismissed without prejudice, to renew said claim at an appropriate future time and in the proper forum.

## II. BACKGROUND

·The Postal Reorganization Act of 1970, supra, creates the "United States Postal Service" as an "independent establishment of the executive branch" and sets forth a special body of law for the regulation of labor relations in the Postal Service. The Act confers upon postal employees a statutory right of collective bargaining and subjects the Postal Service, with certain modifications, to the provisions of the National Labor Relations Act, 39 U.S.C. § 1209(a).

Plaintiffs challenge the operation, execution and enforcement of Chapter 12 of the Act, supra, as applied by Defendant Postmaster General when he voluntarily recognized five national craft unions as exclusive representatives of postal employees and proceeded to enter into collective bargaining agreements with them. Plaintiffs contend that the accordance of exclusive representations to the craft unions and the execution with them of a bargaining agreement effective through August 1975 violates Plaintiffs' statutory rights of collective bargaining and denies them the equal protection of the law. Plaintiff labor organization contends that the Act affords it the right to compete with the craft unions through Board-held elections for the right to represent postal ·workers prior to the execution of a collective bargaining agreement such as that challenged here.

█ The Court is of the view that the Postmaster General's decision to accord majority representative status to the craft unions after expiration of the transitional bargaining period established in § 10(a) of the Act had firm basis in the language of the Act and in the opinion of the Court in National Postal Union v. Blount, supra, which held the Act constitutional, 341 F.Supp. at 372–373. In Blount, the Court reviewed the two-stage congressional scheme for effecting the Postal Service transition from limited postal worker participation to comprehensive labor-

management relations comparable to those in the private sector. Specifically, the Court declared the constitutionality of Section 10(a) of the Act which appointed seven postal craft unions as exclusive collective bargaining agents to represent 600,000 postal employees in labor relations matters during a specified "transitional bargaining period." In this regard, the Court made the following comment:

"In the aftermath of a very serious postal workers strike, Congress built into the Act a transitional bargaining mechanism designed smoothly to incorporate with some modification the status quo in labor representation among the postal employees. While this may be open to criticism as an inaccurate reflection of the appropriate bargaining units, *resolution of that question is reserved by the Act to the National Labor Relations Board.*" 341 F.Supp. at 373. (Emphasis added)

Upon completion of the transitional bargaining period, the permanent bargaining system begins pursuant to Chapter 12 of the Act, *supra,* wherein the question of appropriate bargaining units is expressly reserved to the Board. The statutory mandate is found in Sections 1202 and 1203 of the Act which in pertinent part read as follows:

"*Section 1202. Bargaining Units*

"The National Labor Relations Board shall decide in each case the unit appropriate for collective bargaining in the Postal Service.

"*Section 1203. Recognition of Labor Organizations*

"(a) The Postal Service shall accord exclusive recognition to a labor organization when the organization has been selected by a majority of the employees in an appropriate unit as their representative.

\* \* \* \* \* \*

"(c) When a petition has been filed, in accordance with such regulations as may be prescribed by the National Labor Relations Board—

"(1) by an employee, a group of employees, or any labor organization acting in their behalf, alleging that (A) a substantial number of employees wish to be represented for collective bargaining by a labor organization and that the Postal Service declines to recognize such labor organization as the representative; or (B) the labor organization which has been certified or is being currently recognized by the Postal Service as the bargaining representative is no longer a representative; or

"(2) by the Postal Service, alleging that one or more labor organizations has presented to it a claim to be recognized as the representative;

the National Labor Relations Board shall investigate such petition and, if it has reasonable cause to believe that a question of representation exists, shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the National Labor Relations Board, who shall not make any recommendations with respect thereto. If the National Labor Relations Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof."

Sections 1202 and 1203, which substantially duplicate corresponding provisions of Section 9 of the NLRA, 29 U.S.C. § 159, authorize the NLRB in unambiguous terms to investigate properly filed petitions and to order elections or make such determinations as the Board finds necessary. Where a "question of representation" is found to exist, the Board must decide "the unit appropriate for collective bargaining." Thus the type, scope and composition of a bargaining unit of postal workers having substantial mutual interests in collective bargaining is to be determined by the Board, and will not be disturbed unless clearly arbitrary or unreasonable. NLRB v. White Construction & Engi-

neering Co., Inc., 204 F.2d 950 (5th Cir. 1953). It is equally clear on the face of the statute that elections will be held only where the Board believes it propitious.

Plaintiff labor organization has availed itself of the procedures set forth in Chapter 12 of the Act, *supra,* in an effort to obtain elections in various proposed units of Postal Service employees. In 1971, several locals of the Plaintiff Alliance group filed representation petitions with the Board. Although hearings were held in 1972, the Board has still not rendered a decision on these petitions. When the Postal Service and the national craft unions signatory to the transitional bargaining agreement executed the new agreement at issue here, Plaintiff union filed unfair labor practice charges in the NLRB's Baltimore Regional Office alleging that the Postal Service was in violation of Section 8(a)(2) and (5) of the NLRA, *supra.* These charges were, for the most part, dismissed by the Regional Director in October 1973. Left undecided were allegations that the Postal Service illegally executed a new bargaining agreement during the pendency of the aforementioned representation petitions. The Regional Director decided to hold this aspect of the § 8(a)(2) charge in abeyance pending a decision by the Board with respect to the 1971 representation petitions. His action was affirmed on appeal by the Office of Appeals of the National Labor Relations Board on November 12, 1973.

### III. JURISDICTION

■ From the foregoing, it seems clear that the constitutional challenge to the congressional designation of craft unions as exclusive representatives of postal workers denied by the Court in *Blount, supra,* and the unfair labor practice complaint against the Postmaster General pending before the National Labor Relations Board are now being pursued in this Court. With this in mind, we have determined that the Court has jurisdiction under 28 U.S.C. § 1331 to review Plaintiffs' constitutional allegations insofar as these charges require the Court to determine whether, in continuing to accord exclusive representation to the national craft unions beyond the expiration of the transitional bargaining period, the Postmaster General construed and applied Chapter 12 of the Postal Reorganization Act in a manner that denied Plaintiff union and the individual Plaintiffs the equal protection of the law.

■ However, the Court is without jurisdiction to consider whether the Postmaster General committed an unfair labor practice under Section 8(a)(2) of the National Labor Relations Act, 29 U.S.C. § 158(a)(2), by continuing to accord the aforementioned continued recognition to craft unions since that question directly involves the Defendant General Counsel's final, non-reviewable statutory authority over the investigation and issuance of unfair labor practice complaints. Section 3(d) of the NLRA, 29 U.S.C. § 153(d); *see,* Terminal Freight Co-op Assn. v. N. L. R. B., 447 F.2d 1099 (3rd Cir. 1971); Mayer v. Ordman, 391 F.2d 889 (6th Cir. 1968).

■ The Court is also without jurisdiction to review Plaintiffs' claim that the Postal Service violated the National Labor Relations Act by negotiating new collective bargaining agreement with the incumbent national craft unions during the pendency of the representation petitions filed with the NLRB regional offices in 1971 and 1973. That precise issue has been taken under advisement by the National Labor Relations Board which has exclusive primary jurisdiction over such questions. The Board's consideration of this matter will not be interfered with by this Court.

### IV. QUESTIONS PRESENTED

1. Whether Plaintiffs have raised substantial constitutional questions that are appropriate for resolution by a Three Judge Court pursuant to 28 U.S. C. §§ 2282, 2284?

2. Whether Defendant Postmaster General's interpretation and application of Chapter 12 of the Postal Reorganization Act to accord the craft unions exclusive recognition under Section 1203(a) of the Act without new unit determinations or elections renders the statute unconstitutional inasmuch as it allegedly intrudes upon the fundamental right of postal employees to choose their own bargaining representatives and is allegedly a form of discrimination in favor of craft unions that is not merely transitional, but initiates the permanent bargaining system without affording an opportunity for rival unions to compete with the incumbent craft unions?

## V.  DECISION

A. *Plaintiffs Have Failed to State Adequate Grounds for Convening a Three Judge Court.*

■ Plaintiffs have applied to this Court for the reconvening of the three-judge statutory court in National Postal Union et al. v. Blount, *supra.* As a basis for reconvening said Three-Judge Court pursuant to 28 U.S.C. §§ 2282, 2284, Plaintiffs point out that Count I of their Complaint seeks to enjoin the enforcement, operation and execution of an Act of Congress, and that a Three Judge Court is required to grant such relief. However, it is the Court's conclusion upon close reading of the Complaint that Plaintiffs' constitutional allegations, in essence, are aimed at administrative action on the part of the Postmaster General and against prosecutorial inaction by the General Counsel. Where, as here, review of administrative action is sought, a Three Judge Court need not be constituted. William Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S. Ct. 804, 83 L.Ed. 1189 (1939); Sardino v. Federal Reserve Bank of New York, 361 F.2d 106, 113–166 (2nd Cir.), cert. denied, 385 U.S. 898, 87 S.Ct. 203, 17 L. Ed.2d 130 (1966). Compare McGlotten v. Connally, 338 F.Supp. 448 (D.D.C. 1972). In addition, and notwithstanding the thrust of Plaintiffs' claims for relief, a Three Judge Court should not be convened where, as is the Court's finding here, the constitutional attack on the statute as applied is insubstantial. See, Ex Parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152.

B. *The Postmaster General's Action in According Exclusive Recognition to the Craft Unions Pursuant to § 1203(a) of the Postal Reorganization Act Was Not An Invidious Discrimination Against Plaintiff Union But Constituted a Valid Exercise of Constitutionally Delegated Authority.*

■ The Court considers Plaintiffs' constitutional challenge to the Postmaster General's interpretation and application of Chapter 12 of the Postal Reorganization Act, 39 U.S.C. § 1201 et seq., to be without merit. The Postmaster General's decision to continue to accord exclusive recognition to the craft unions *beyond* the transitional bargaining period has its basis in Section 10(a) of the Act where Congress granted seven national craft unions the right of exclusive bargaining representation of postal workers *during* the transitional bargaining period. This Congressional designation of the craft unions emanates from the selection of such unions as national exclusive bargaining representatives of postal workers under elections held pursuant to Presidential Executive Orders granting the right of representation and bargaining as prescribed in those Orders. Exec.Order No. 10,988, 27 Fed. Reg. 551 (1962) and Exec.Order No. 11,491, 34 Fed.Reg. 17605 (1969). The grant of exclusive representation in § 10(a) withstood constitutional challenge in National Postal Union v. Blount, 341 F.Supp. 370 (D.D.C.1972), where the Court held that the Postal Reorganization Act, including Section 10(a), is constitutional. That holding is undisturbed by the Postmaster General's action under challenge here. For in recognizing the incumbency of the constitutionally designated exclusive representatives, the Postal Service acted in a manner required by Section 1203(a), and the con-

stitutionality of Section 1203(a) is beyond dispute.

Upon completion of the transitional bargaining period, the Act confers upon the postal employees a statutory right of collective bargaining set forth in Chapter 12 of the Act, *supra*. The Postmaster General did not interfere with the exercise of that right in continuing to accord majority representation status to the craft unions after July 20, 1973 when the transitional bargaining agreement expired. To the contrary, the Court finds that the Postal Service was required to accord exclusive recognition to the incumbent craft unions under Section 1203(a) of the Act, *supra*, since those unions were presumed to have been selected by a majority of the postal employees in appropriate units as their representatives. Plaintiff labor organization is understandably dissatisfied with the composition of the bargaining units at the time the new agreement was executed by the Postal Service and the incumbent unions. However, Plaintiff union's failure to benefit as quickly as it might like from the § 1203 unit determination procedures conducted by the NLRB does not give rise to a substantial claim of invidious discrimination. Those procedures enacted by Congress in Chapter 12 of the Act were borrowed primarily from Section 9 of the National Labor Relations Act, 29 U.S.C. § 159, to afford outside unions the opportunity to compete with the craft unions and to provide postal employees with a means to choose bargaining representatives.

The constitutionality of those procedures is established by judicially accepted principles of law developed under Section 9 of the NLRA. See N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937); N.L. R.B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938); Phelps Dodge Corp. v. N.L.R. B., 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); cf. Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937).

It is important to recognize that Chapter 12 does not mandate Board action on representation petitions filed pursuant to § 1203(c) of the Act by a date certain. Accordingly, there is no statutory requirement that a Board-held election precede the Postal Service's according exclusive recognition to a majority representative pursuant to § 1203(a) of the Act, *supra*. Instead the Act sets forth well-conceived representation procedures for petitioning the NLRB to establish "appropriate bargaining units" and conduct representation elections to select bargaining representatives in certain units.

Plaintiffs contend that the constitutional validity of the Chapter 12 procedures *must* turn on whether the Act requires the Board to establish the permanent bargaining apparatus contemplated by Chapter 12 by making unit determinations in the Postal Service and by holding elections in those units. This argument, for reasons not clear to the Court, presumes that outside unions and individual workers who seek to invoke the § 1203(c) petition procedures will either be unable to "trigger" the instant procedure or will receive unfair treatment in the Board's efforts to group those employees having substantial mutual interest in appropriate bargaining units. Plaintiffs' claim here is simply without merit. As the Court in *Blount* emphasized, the very existence of the representation procedures set forth in §§ 1202 and 1203 of the Act redeems the Congressionally mandated transitional discrimination against outside unions in § 10(a) of the Act by limiting in duration the designation of the craft unions as bargaining representatives to the point in time when petitions filed under Chapter 12 of the Act result in the dislodging of the incumbent craft unions. Thus, by providing outside unions with the ultimate opportunity to petition the National Labor Relations Board to establish appropriate bargaining units that will allow them to participate in representation elections and win ac-

credited status as the certified bargaining representatives of certain units, the Act incorporates concepts of political democracy into Postal Service labor relations and thereby precludes discrimination of a kind Plaintiffs suggest in the workers' selection of their collective bargaining representatives. As long as the Postal Service acts within the scope of its authority granted in Chapter 12 of the Act, as it has done here, and the representation opportunitites provided in Chapter 12 are preserved, the Act is beyond constitutional challenge.

The Court notes in passing that in the absence of a Board-held election or the successful rebuttal of a bargaining representative's majority status, the Postal Service is constrained under § 1203(a) of the Act to continue to recognize the incumbent majority representative of the postal employees in an appropriate bargaining unit. 39 U.S.C. § 1203(a). Indeed, it is a well-settled labor law rule in the private sector that an employer's refusal to bargain with the recognized majority representative may constitute an unfair labor practice under Section 8(a)(5) of the NLRA, *supra*.

As stated in Part III of this Opinion, the Court will not reach the merits of Plaintiffs' claim that the Postal Service's continued recognition of the craft unions constitutes an unfair labor practice pursuant to § 8(a)(2) of the NLRA, 29 U.S.C. § 158(a)(2), because the Court is without jurisdiction to review such a cause of action. The NLRB has considered this question and, in a final, unreviewable decision, made the determination not to issue an unfair labor practice complaint. See Exhibit A to Plaintiffs' Complaint; see also International Union v. International Union, 173 F.2d 557, 559 (8th Cir. 1949); Terminal Freight Co-op Assn. v. N.L.R.B., 447 F. 2d 1099, 1102 (3rd Cir. 1971); Wellington Mill Div., West Point Mfg. Co. v. N.L.R.B., 330 F.2d 579, 590 (4th Cir. 1964), cert. denied, 379 U.S. 882, 85 S. Ct. 144, 13 L.Ed.2d 88; Contractor's Ass'n of Phila. et al. v. N.L.R.B., 295 F. 2d 526 (3rd Cir. 1961), cert. denied, 369 U.S. 813, 82 S.Ct. 689, 7 L.Ed.2d 612.

## VI. CONCLUSION

The Court has concluded that the Postal Service's continued recognition of the incumbent craft unions as majority representatives of certain units of postal employees is consistent with well-settled principles of labor law requiring the employer to bargain with the majority representative of his workers. The Postal Service's action in this regard was contemplated by Chapter 12 of the Postal Reorganization Act of 1970 and in no way disturbs the constitutionality of the statute as upheld by the Court in National Postal Union v. Blount, *supra*.

The National Labor Relations Board is presently reviewing representation petitions filed by locals of Plaintiff labor organization pursuant to § 1203(c) of the Act and will ultimately determine whether unit determinations and secret elections as provided for in the Act are appropriate to the situation at hand. Plaintiffs' remaining federal questions, which concern the unfair labor practice dimension to the Postal Service's continued recognition of the incumbent craft unions and its execution of the new bargaining agreement with these representatives, are inextricably bound up in the administrative remedies Plaintiffs have pursued before the Board. Thus it would be premature for this or any court to review allegedly objectionable administrative action which has not yet been ruled upon by the agency with primary jurisdiction to pass thereon.