**NATIONAL ALLIANCE OF POSTAL AND FEDERAL EMPLOYEES et al., Appellants,**

v.

**E. T. KLASSEN, Individually and as Postmaster General of the United States, et al.**

**No. 74–1384.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 26, 1975.

Decided June 9, 1975.

Appeal from the United States District Court for the District of Columbia (D.C.Civil Action 2143–73).

Fred W. Drogula, Washington, D. C., for appellants.

Harry R. Silver, Atty., Dept. of Justice, with whom Carla A. Hills, Asst. Atty. Gen., New York City, Earl J. Silbert, U. S. Atty., Stephen F. Eilperin, Atty., Dept. of Justice and Stephen E. Alpern, Atty., U. S. Postal Service, were on the brief for appellee Klassen.

Peter Carre, Atty., N. L. R. B., for appellee Nash. John S. Irving, Deputy Gen. Counsel, N. L. R. B., Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Abigail Cooley, Asst. Gen. Counsel for Sp. Litigation and Alan Banov, Atty., N. L. R. B., were on the brief for appellee Nash.

Mozart G. Ratner, and Bernard Ries, Washington, D. C., were on the brief for appellee, National Association of Letter Carriers AFL–CIO.

Before WRIGHT and TAMM, Circuit Judges, and JACK R. MILLER,* Judge, United States Court of Customs and Patent Appeals.

Opinion for the Court filed by Judge Miller.

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

MILLER, Judge:

This is an appeal from the judgment of the district court, 369 F.Supp. 747 (1974): (1) denying plaintiff-appellants' application for the convening of a three-judge court; (2) partially granting[1] defendant-appellees' motion for summary judgment with respect to plaintiff-appellants' constitutional claim that they were denied equal protection of the law by sections 10(a), 1202, and 1203 of the Postal Reorganization Act (PRA) as construed by the Postmaster General (PMG); (3) dismissing with prejudice, for lack of jurisdiction, plaintiff-appellants' claim that the PMG, by granting exclusive recognition to certain craft unions pursuant to Chapter 12 of the PRA, committed an unfair labor practice under section 8(a)(2) of the National Labor Relations Act (NLRA); and (4) dismissing, for lack of jurisdiction, plaintiff-appellants' claim that the PMG, by negotiating new collective bargaining agreements with said craft unions during pendency of representation petitions before the National Labor Relations Board (NLRB), committed an unfair labor practice under section 8(a)(2) of the NLRA (but without prejudice to renew said claim at an appropriate future time in the proper forum). We affirm.

## BACKGROUND OF THE CASE

Appellants are an independent industrial labor organization of employees (National Alliance) and three Postal Service employees who are members thereof. Appellees are the Postmaster General, the General Counsel of the NLRB (GCNLRB), and the National Association of Letter Carriers (NALC), which was an intervenor in the proceedings below.

On August 12, 1970, the Congress enacted the Postal Reorganization Act (39 U.S.C. § 101 et seq.), creating the United States Postal Service "as an independent establishment of the executive branch of the Government of the United States." 39 U.S.C. § 201. Section 1209 of the PRA (39 U.S.C. § 1209) granted Postal Service employees collective bargaining rights and, with minor exceptions, subjected the Postal Service to the terms of the NLRA.[2] Section 10(a) of the PRA (84 Stat. 784), referred to as the "transitional section," provided:

As soon as practicable after the enactment of this Act, the Postmaster General and the labor organizations which as of the effective date of this section hold national exclusive recognition rights granted by the Post Office Department, shall negotiate an agreement or agreements covering wages, hours, and working conditions of the employees represented by such labor organizations. . . .

Pursuant to this section, the PMG and the national craft unions (including appellee NALC) holding national exclusive recognition status granted by the Post Office Department entered into a nation-

---

1. The court said that it would be premature to review allegedly objectionable administrative action which had not yet been ruled upon by the agency with primary jurisdiction to pass thereon, namely the National Labor Relations Board.

2. Prior to the effective date of the PRA on July 1, 1971, collective bargaining between the Post Office Department and labor unions representing postal employees was governed by Exec. Order No. 10988, 27 Fed.Reg. 551 (1962). Section 6(a) thereof accorded "exclusive recognition" to a labor organization designated or selected by a majority of the employees in each unit. Without contravention by appellants, appellee GCNLRB relates as follows: Elections were held in 1962 and 1963 to determine the national exclusive representatives for employees in the Post Office Department. A ma-

jority of the employees voting in seven national craft units selected seven national craft unions, including appellee NALC, which the Department of Labor certified as national exclusive representatives for postal employees in those units. Thereafter, the Post Office Department and the seven craft unions entered into successive collective bargaining agreements, including one effective from March 9, 1968, to March 8, 1970, which was extended on a day-to-day basis until it was succeeded by a 1971 national agreement. Under Exec. Order No. 10988 and its successor, Exec. Order No. 11491, 34 Fed.Reg. 17605 (1969), National Alliance held national "formal" recognition under which it had authority to meet and consult with the agency on matters of personnel policy.

al agreement on July 20, 1971, for a two-year period during which those unions were recognized as the exclusive bargaining agents for postal workers with exclusive representation rights.

The NLRB assumed jurisdiction over labor relations in the Postal Service on July 1, 1971, the effective date of the PRA. At the same time, sections 1202 and 1203 of the PRA (39 U.S.C. §§ 1202, 1203), which are particularly involved in this appeal, became operative. In pertinent part, these provide:

§ 1202. Bargaining units

The National Labor Relations Board shall decide in each case the unit appropriate for collective bargaining in the Postal Service. . . .

§ 1203. Recognition of labor organizations

(a) The Postal Service shall accord exclusive recognition to a labor organization when the organization has been selected by a majority of the employees in an appropriate unit as their representative.

. . . . . . .

(c) When a petition has been filed, in accordance with such regulations as may be prescribed by the National Labor Relations Board—

(1) by an employee, a group of employees, or any labor organization acting in their behalf, alleging that (A) a substantial number of employees wish to be represented for collective bargaining by a labor organization and that the Postal Service declines to recognize such labor organization as the representative; or (B) the labor organization which has been certified or is being currently recognized by the Postal Service as the bargaining representative is no longer a representative

. . .

the National Labor Relations Board shall investigate such petition and, if it has reasonable cause to believe that a question of representation exists,

shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the National Labor Relations Board, who shall not make any recommendations with respect thereto. If the National Labor Relations Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof.

Nearly two years later, as the expiration date of the July 20, 1971, national agreement was approaching, there had been no decision by the NLRB under section 1202. Accordingly, the Postal Service and the national craft unions commenced negotiations, and a new two-year national agreement was reached running from July 21, 1973, to July 21, 1975.

Meanwhile, in October of 1970, shortly after enactment of the PRA, National Alliance and two other unions brought an action in district court to enjoin enforcement of section 10(a), the "transitional section" quoted above. They complained that it was "class" or "special" legislation which denied them and their members equal protection of the laws guaranteed by the Fifth Amendment to the Constitution. A three-judge court was convened which, on March 15, 1972, upheld the constitutionality of the PRA. National Postal Union v. Blount, 341 F.Supp. 370 (D.D.C.), aff'd mem. sub nom., National Association of Letter Carriers, AFL–CIO v. National Alliance of Postal & Federal Employees, 409 U.S. 808, 93 S.Ct. 67, 34 L.Ed.2d 69 (1972).

The court held that the transitional bargaining mechanism established by section 10 was not invidious discrimination and declined to grant plaintiffs the right to participate in negotiations prescribed by section 10 and to process grievances of its members, except as they might be entitled to do so under section 9(a) of the NLRA (29 U.S.C. § 159(a)).[3] The court said (341 F.Supp. at 373):

---

**3.** Section 9(a) provides that representatives designated for purposes of collective bargaining by the majority of the employees in a unit "appropriate" for such purposes shall be the

In the aftermath of a very serious postal workers strike, Congress built into the Act a transitional bargaining mechanism designed smoothly to incorporate with some modification the status quo in labor representation among the postal employees. While this may be open to criticism as an inaccurate reflection of the appropriate bargaining units, resolution of that question is reserved by the Act to the National Labor Relations Board.

However, the court ordered that National Alliance be granted reasonable opportunity, commensurate with that accorded the craft unions, to address new employees to seek new members during the transitional period to afford it "a fair opportunity in this manner to seek to maintain a healthy life during the transitional period, enabling it more fully to compete for ultimate recognition as exclusive representative in *appropriate* units before the National Labor Relations Board in future proceedings authorized or required by the Act." (341 F.Supp. at 373, emphasis supplied.)

In 1971, while the three-judge court was considering the *Blount* case, several National Alliance locals filed representation petitions with the NLRB seeking elections in various proposed units of employees. On February 4, 1972, the NLRB ordered hearings in its Manhattan Regional Office.[4] Following the hearings, the cases were transferred to the NLRB, where oral argument was heard September 10, 1973. On February 5, 1974, shortly after the district court's judgment was entered from which this appeal was taken, the NLRB dismissed the petitions after finding that none of the petitioners sought elections in units that would be "appropriate" for bargaining in the Postal Service. United States Postal Service, 208 NLRB No. 144, 85 LRRM 1212 (1974). Pointing out that the legislative history of the PRA "instructs" the NLRB to apply its private sector criteria, it analyzed the Postal Service organization to determine "what lines of division may be most useful to the parties in furthering their collective-bargaining relationships." It said (*id.* at ——, 85 LRRM at 1217):

> The Employer's size, collective-bargaining history, number of employees, geographic dispersion, and centralized operational organization impose certain practical limitations on the numerical proliferation of bargaining units. It is obvious that meaningful collective bargaining could not realistically occur at each of the Employer's 32,000 individual facilities.[16] On the other hand, we are aware that certain broad horizontal or vertical divisions of employees into homogeneous units with the requisite community of interests might well promote meaningful, or at least feasible, collective bargaining.

The footnote stated that if each of the intervenors (the national craft unions) could represent their crafts on a single facility basis, the number of potential units would exceed 100,000.[5]

exclusive representatives of all the employees in such unit for purposes of collective bargaining. Section 9(b) provides that the NLRB shall decide in each case whether the unit "appropriate" for purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof.

4. National Alliance requested that the NLRB establish a number of "industrial" units (i. e., all employees in designated plants, facilities, or localities) in lieu of craft units (i. e., all employees performing a specific type work).

5. National Alliance argues that the NLRB did not determine what units are appropriate for bargaining. However, we do not read section 1202 of the PRA as mandating the NLRB to make such a determination before representation petitions are filed. We note that the NLRB did suggest alternative appropriate units for bargaining and elections in the Postal Service:

> [A] unit encompassing all employees within a region, metropolitan center, metropolitan area, or district might constitute an appropriate unit . . . [but] any less-than-nationwide unit which does not at least encompass all employees within a district or sectional center is too fragmented for meaningful collective bargaining. Accordingly, we shall dismiss any petition which fails to meet this initial standard.
>   . . . However, our decision herein is not to be construed as an administrative fiat

During the "open" period, sixty to ninety days before expiration of the 1971 national agreement in July of 1973, locals of the National Alliance filed some twenty-eight additional representation petitions with various regional offices of the NLRB, seeking elections among employees in various local units.[6] Processing of these petitions was deferred by Regional Directors pending the NLRB's determination on the 1971 . petitions. They were dismissed following the NLRB decision of February 5, 1974.

When the Postal Service and the national craft unions executed the 1973 national agreement, National Alliance filed unfair labor practice charges in the NLRB's Baltimore Regional Office alleging that the Postal Service violated sections 8(a)(2) and (5) of the NLRA (29 U.S.C. § 158(a)(2), (5))[7] by: (1) negotiating and executing said agreement during the pendency of a question concerning representation raised by the 1971 and 1973 petitions;' and (2) entering into another agreement with the national craft unions, contrary to sections 1202 and 1203 of the PRA, when they had not been elected by employees in NLRB conducted elections. On October 2, 1973, the Regional Director dismissed the charges except for the one concerning action of the Postal Service during pendency of the petitions. This was held in abeyance awaiting the NLRB's action on the 1971 and 1973 petitions.[8] National Alliance appealed the partial dismissal. On November 12, 1973, the Office of Appeals of GCNLRB upheld the Regional

Director's action. On December 5, 1973, appellants filed the instant action in district court.

## OPINION

### Denial of Appellants' Application to Convene Three-Judge Court

The district court denied appellants' application, based on 28 U.S.C. §§ 2282, 2284, for the convening of the three-judge court which decided the *Blount* case. It concluded that the allegations in the complaint were, in essence, aimed at administrative action on the part of the PMG and inaction on the part of GCNLRB; that a three-judge court need not be convened for such purpose, citing William Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189 (1939) and Sardino v. Federal Reserve Bank of New York, 361 F.2d 106, 113–116 (2d Cir.), cert. denied, 385 U.S. 898, 87 S.Ct. 203, 17 L.Ed.2d 130 (1966); and that a three-judge court should not be convened where the constitutional attack on the statute as applied is insubstantial, citing Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

■ Appellants urge that the constitutionality of sections 10(a) and 1203(a) must be reexamined because the exclusive recognition of the national craft unions which the court upheld in *Blount* was for a "transitional period" of "merely two years," whereas, in fact, this recognition has extended beyond that "transitional period." They state:.

> (5) to refuse to bargain collectively with the representatives of his employees . . . ."

to adhere to the preexisting national craft units which Congress, under the PRA, continued during the transition period or as precluding a finding of unit appropriateness for a unit less than national in scope.
*United States Postal Service*, supra at ——, 85 LRRM at 1217.

6. According to appellee GCNLRB, some petitions sought elections for single post offices, and others sought elections among employees in various cities or metropolitan areas.

7. "(a) It shall be an unfair labor practice for an employer—

(2) to dominate or interfere with the formation or administration of any labor organization . . .;

8. Following dismissal of the 1971 and 1973 petitions, the Acting Regional Director, on June 28, 1974, dismissed this charge. There was no appeal. This was the charge which the district court had left open in its January 22, 1974, order of dismissal without prejudice to renew at an appropriate future time in the proper forum.

Appellant believes that had the *Blount* court been apprised of the contention that the right of postal workers to select bargaining agents of their own choosing was deleted—not for merely two years, but indefinitely—the Court would have held that the discrimination it found in the statute was unreasonable and invidious.

However, we believe that appellants misapprehend both the opinion in *Blount* and the Congressional design specifically set forth in the PRA. The *Blount* court provided this definition of "transitional period" (341 F.Supp. at 372 n. 4):

The transitional period referred to includes the period of one year from enactment of the Act during which the reorganization of the postal service would occur . . . . The transitional period should also be considered, insofar as the collective bargaining provisions of the Act are concerned, to be the period prior to the establishment of bargaining units and elections of representatives under the provisions of the National Labor Relations Act, as provided in Chapter 12 of the [PRA], or such earlier action as might be taken by the Labor Board defining rights and obligations of the Postmaster General, the labor organizations representing postal employees, and their members.

Thus, the court, as did the Congress in Chapter 12 of the PRA, pointed to the provisions of the NLRA for establishment of bargaining units and elections of representatives. The "transitional period" upheld by the court was to extend to the Board's establishment of bargaining units and elections of representatives, or such earlier action as might be taken by the Board defining rights and obligations of the Postmaster General, the labor organizations representing postal employees, and their members.

The National Alliance, by the petitions filed in 1971 and 1973, properly followed the procedure provided by the NLRA in the hope that the NLRB would decide that the units it contended for were "appropriate" and would order elections in those units. Had the NLRB decided these petitions favorably, counsel for appellants indicated (at oral argument) this appeal probably would not have been filed. However, the decisions were unfavorable, and Congress has provided no appeal from those decisions. As this court has said:

[T]he question of an appropriate bargaining unit falls within "the wide area of determinations which depend on the Board's expertise and discretion" . . . . What factors the Board considered and what weight it accorded to them are questions which may only be raised in a judicial review proceeding under § 10 [29 U.S.C. § 160].[9]

International Ass'n of Tool Craftsmen v. Leedom, 107 U.S.App.D.C. 268, 270, 276 F.2d 514, 516, cert. denied, 364 U.S. 815, 81 S.Ct. 45, 5 L.Ed.2d 46 (1960).

■ Appellants contend that section 1202 of the PRA was enacted to insure that independent unions could survive to compete with craft unions for recognition upon an equal footing. Their brief quotes from statements to this effect by several members of the House of Representatives and the Senate during hearings and debate on the PRA. Although such statements undoubtedly represent the personal views of the members, they could hardly be held to represent the views of the majority in each chamber in light of the clear and specific provision of section 1202 that the NLRB shall decide in each case the unit "appropriate" for collective bargaining in the Postal Service. Obviously, if a nonnational or noncraft union petitions the NLRB for an election in a unit that is determined by the NLRB to *not* be "appropriate," the union will not be able to compete. Congress did not see fit to define "appropriate," leaving that to the expertise of the NLRB, thus:

9. Review would occur upon a cease and desist order of the NLRB in which the record contains the NLRB's investigation and disposition of a representation petition. See Boire v. Greyhound Corp., 376 U.S. 473, 476–80, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964).

It is the intent of the Conference Committee that these provisions of the conference substitute leave to the National Labor Relations Board the judgment as to what will be the appropriate units for collective bargaining in the Postal Service on the basis of the same criteria applied by the Board in determining appropriate bargaining units in the private sector. The conference substitute deems it desirable to leave the determination of appropriate bargaining units entirely in the judgment of the NLRB rather than to predetermine such matters in any way.

Conference Rep., H.R. Rep. No. 91–1363, 91st Cong., 2d Sess. 82 (1970).

■ Appellants have not shown that the NLRB acted in excess of its power or contrary to the provisions of the NLRA, which would provide a basis for jurisdiction of the district court itself, although not for convening of a three-judge court. Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). Nor have appellants been denied an opportunity for hearing or other due process right by the NLRB which also would give the district court jurisdiction. Fay v. Douds, 172 F.2d 720 (2d Cir. 1949); Lawrence Typographical Union v. McCulloch, 121 U.S.App.D.C. 269, 349 F.2d 704 (1965).

In view of the foregoing, we hold that the district court did not err in denying plaintiff-appellants' application for the convening of a three-judge court.

*Summary Judgment Against Plaintiff-Appellants' Claim That They Were Deprived of Equal Protection of the Law by the PRA as Construed by the PMG*

■ The district court determined that appellants' constitutional challenge to the PMG's interpretation and application of Chapter 12 of the PRA was without merit. The court pointed out that constitutionality of the grant of exclusive sive representation to the national craft unions by section 10(a) of the PRA had been upheld in the *Blount* case. It held that, in recognizing the incumbency of the constitutionally-designated exclusive representatives, the PMG acted in a manner required by section 1203(a) of the PRA.[10] The court further held that the PMG, in continuing to accord exclusive representation status to the national craft unions after July 20, 1973, did not interfere with the right of collective bargaining of postal employees set forth in Chapter 12 of the PRA. On the contrary, the court said that the Postal Service was required to continue to recognize the craft unions by section 1203(a), because those unions were presumed to have been selected by a majority of the postal employees in appropriate units as their representatives.[11]

Appellants take issue with this presumption, arguing that "[s]ince the expiration of the transitional period *no* union has been 'selected' by a majority of postal workers as their bargaining representatives in any unit . . . ." However, this argument proceeds from misapprehending the opinion in *Blount* and Congressional design set forth in the PRA discussed earlier in this opinion. Moreover, as pointed out by appellee-PMG, section 1203(c)(1)(B) specifically contemplates that the Postal Service may recognize a labor organization that has not been certified in an election as the exclusive representative of postal workers by referring to "the labor organization which has been certified or is being currently recognized by the Postal Service."

Accordingly, we hold that the district court did not err in granting defendant-

---

10. The court noted that the procedures prescribed by Chapter 12 of the PRA were borrowed primarily from section 9 of the NLRA (29 U.S.C. § 159) and that the constitutionality of similar procedures had been established, citing NLRB v. MacKay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381 (1938), and Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941).

11. The court observed that the Congressional grant of exclusive recognition to the national craft unions by section 10(a) of the PRA emanated from the selection of the unions under elections held pursuant to Presidential Executive Orders, note 2, *supra*.

appellees' motion for summary judgment with respect to plaintiff-appellants' claim that they were denied equal protection of the law by the PRA as construed by the PMG.

*Dismissal (for Lack of Jurisdiction) of Plaintiff-Appellants' Claims that the PMG Committed Unfair Labor Practices Under Section 8(a)(2) of the NLRA*

The district court stated that it would not reach the merits of plaintiff-appellants' claim that continued recognition of the craft unions by the Postal Service constituted an unfair labor practice under section 8(a)(2) of the NLRA, because the court was without jurisdiction to review such a cause of action. It pointed out that the GCNLRB had considered this claim and had determined not to issue an unfair labor practice complaint; that this was a final, unreviewable decision, citing, among other cases, International Union of Operating Engineers v. International Union, 173 F.2d 557, 559 (8th Cir. 1949).

With respect to appellants' additional claim of an unfair labor practice by the Postal Service's execution in 1973 of the new, two-year national agreement during pendency of representation petitions before the NLRB, the district court stated that this was "inextricably bound up in the administrative remedies Plaintiffs have pursued before the Board . . . the agency with primary jurisdiction to pass thereon." Accordingly, it dismissed plaintiff-appellants' claim of an unfair labor practice for lack of jurisdiction.

■ Although *International Union* did not involve a refusal by the GCNLRB to issue an unfair labor practice complaint, the court stated that section 10 of the Administrative Procedure Act (5 U.S.C.

§ 701 et seq.), upon which appellant relied, "is expressly inapplicable to the instant case, since the Board's action in calling for an election was by law committed to its discretion, was not subject to review, and was not final." (Footnote omitted.) In any event, it is well settled that the GCNLRB has unreviewable discretion to refuse to issue an unfair labor practice complaint. Vaca v. Sipes, 386 U.S. 171, 182, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Hourihan v. NLRB, 91 U.S. App.D.C. 316, 201 F.2d 187 (1952), cert. denied, 345 U.S. 930, 73 S.Ct. 792, 97 L.Ed. 1359 (1953).

■ Appellants argue that where questions of statutory construction are involved—as opposed to findings of facts or making expert judgments on labor policies—courts will review refusals to issue unfair labor practice complaints, citing Southern California District Council v. Ordman, 318 F.Supp. 633 (C.D.Cal. 1970). We do not regard that case, which the court noted was not involved with the merits, as apposite. The NLRB's dismissal of this claim of appellants involved the factual determination of whether, as of the effective date of the PRA, the craft unions held national exclusive recognition rights which had been granted by the Post Office Department, as prescribed by section 10(a) of the PRA. Once that determination was made, the NLRB's decision was controlled by the *Blount* case, including the court's interpretation of "transitional period."

Therefore, we hold that the district court properly dismissed plaintiff-appellants' unfair labor practice claims against the PMG for lack of jurisdiction.

The judgment of the district court is affirmed.