349 F.2d 704
 121 U.S.App.D.C. 269
 LAWRENCE TYPOGRAPHICAL UNION, Affiliated with International
Typographical Union, AFL-CIO, Appellant,
v.
Frank W. McCULLOCH et al., individually and as member of and
constituting the National Labor Relations Board, Appellees.
 No. 18247.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 28, 1964.
Decided May 6, 1965.
 
 Mr. George Kaufmann, Washington, D.C., with whom Mr. Gerhard P. Van Arkel, Washington, D.C., was on the brief, for appellant.
 Mr. Melvin J. Welles, Atty., National Labor Relations Board, for appellees. Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and James C. Paras, Atty., National Labor Relations Board, were on the brief, for appellees.
 Before BAZELON, Chief Judge, EDGERTON, Senior Circuit Judge, and WRIGHT, Circuit Judge.
 EDGERTON, Senior Circuit Judge:
 
 
 1
 The appellant Union sued in the District Court for a declaratory judgment that the direction of a decertification election by a Regional Director of the National Labor Relations Board is void and for an injunction against the election. The Union appeals from a summary judgment for the Board.
 
 
 2
 Kansas Color Press, Inc., had recognized the Union as the representative of its mailing and composing room employees. On September 19, 1961, during attempts to negotiate a new collective bargaining agreement, the Union called a strike and established a picket line. In January, 1963, mailing and composing room employees petitioned the Board to decertify the Union pursuant to 9(c)(1) (A)(ii) of the National Labor Relations Act, 29 U.S.C. 159(c)(1)(A)(ii) (1958).
 
 
 3
 The Union afterwards filed unfair labor practice charges against the employer, alleging inter alia that the employer had initiated and fostered the decertification petitions in violation of 8(a)(1) and 8(a)(2) of the Act, 29 U.S.C. 158(a)(1)-(2) (1958). The Board's Regional Director and General Counsel refused to issue a complaint on these charges. At a subsequent hearing on the decertification petitions, the hearing officer refused to admit evidence offered by the Union to prove that the employer had instigated the petitions, and refused to incorporate in the record the Regional Director's reports of his investigation of the unfair labor practice charges. The Regional Director upheld the hearing officer's rulings, on the ground that 'unfair labor practice allegations are not properly litigable in a representation proceeding,'[1] found that a question of representation existed, and directed an election. The Union argues that the exclusion of evidence deprived it of due process of law and violated the requirement of 9(c)(1) of the Act that the Board 'shall provide for an appropriate hearing' and shall direct an election 'if the Board finds upon the record of such hearing that * * * a question of representation exists * * *.'
 
 
 4
 Judicial review of representation proceedings is very limited. They cannot be reviewed by courts of appeals under 10(f) of the Act, because direction of an election or certification of a bargaining representative is not 'a final order of the Board.' National Labor Relations Board v. Internat'l Brotherhood of Electrical Workers, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354 (1940); American Federation of Labor v. National Labor Relations Board,308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940). Ordinarily representation proceedings can be reviewed only after the Board has based an order in an unfair labor practice proceeding on facts found in the representation proceeding.[2] Two exceptions have been established, which allow District Court review under the general terms of 28 U.S.C. 1337 (1958). The Union relies on both.
 
 
 5
 ( 1) A District Court has jurisdiction to correct a violation by the Board of a clear, specific, and mandatory provision of the Act.[3] Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). Section 9(c)(1) of the Act makes it mandatory that the Board hold an 'appropriate hearing' before it certifies or decertifies a bargaining representative. Inland Empire Dist. Council Lumber and Sawmill Workers Union, Lewiston, Idaho v. Millis, 325 U.S. 697, 706, 65 S.Ct. 1316, 89 L.Ed. 1377, rehearing denied, 326 U.S. 803, 66 S.Ct. 11, 90 L.Ed. 489 (1945).
 
 
 6
 The Union says the Board's hearing was not appropriate because it excluded evidence of employer instigation. The Board concedes that such evidence is relevant to the existence of a question of representation. Only an employee may file a decertification petition under 9(c)(1)(A)(ii), and no election may be held on a petition instigated by the employer. See Sperry Gyroscope Co., Div. of Sperry Rand Corp., 136 NLRB 294, 297 (1962); Birmingham Pub. Co., 118 NLRB 1380 (1957). The Board holds that since instigation is an unfair labor practice, it may be shown only in an unfair labor practice proceeding. See Union Mrg. Co., 123 NLRB 1633 (1959); Worden-Allen Co., 99 NLRB 410 (1952); cf. In the Matter of Times Square Stores Corp., 79 NLRB 361 (1948). Here, the Regional Director, by refusing to issue a complaint against the employer, prevented the Union from showing it in such a proceeding.
 
 
 7
 The Board's application of its Union Mfg. Co. doctrine violates no clear, specific, and mandatory provision of the Act and therefore does not give the District Court jurisdiction of this suit. The Act does not say the Board must hear evidence of employer instigation. Congress intended the Board to establish, in its discretion, criteria for determining whether a question of representation exists.[4] We could not review the Board's determination that employer instigation of a petition is relevant to the existence of a question of representation, and neither can we review the Board's determination that such instigation must be established in an unfair labor practice proceeding. 'What factors the Board considered and what weight it accorded to them are questions which may only be raised in a judicial review proceeding under 10.' Internat'l Ass'n of Tool Craftsmen v. Leedom, 107 U.S.App.D.C. 268, 270, 276 F.2d 514, 516 (1960).[5]
 
 
 8
 Congressional use of the term 'appropriate hearing' shows that 'great latitude concerning procedural details is contemplated.' Inland Empire Dist. Council Lumber and Sawmill Workers Union, Lewiston, Idaho v. Millis, 325 U.S. 697, 706, 65 S.Ct. 1316, 1321, rehearing denied, 326 U.S. 803, 66 S.Ct 11 (1945). If representation hearings could be reviewed in the District Court to determine whether they were 'appropriate,' most representation proceedings could be reviewed. This would violate the express intention of Congress to restrict review so as to prevent dilatory tactics and delay in certification.[6]
 
 
 9
 Section 9(c)(1) of the Act requires findings 'upon the record,' and the Union says the Board's finding that the employer did not instigate the petition was based on facts the Regional Director had found in investigating the Union's unfair labor practice charges. But the Board merely excluded certain evidence and based its finding on the record so limited. It violation no clear and mandatory provision of the Act.
 
 
 10
 ( 2) The District Court has jurisdiction to review action of the board which can be shown to have violated the Constitution.[7] The Union says the Board's refusal, in the decertification hearing, to admit evidence of employer instigation deprived the Union of due process. But concerning an alleged deprivation of property rights, 'no hearing at the preliminary stage is required by due process so long as the requisite hearing is held before the final administrative order becomes effective.' Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 598, 70 S.Ct. 870, 872, 94 L.Ed. 1088 (1950). A decertification order would not become 'effective' until unfair labor practice proceedings in which decertification was relevant were brought. Decertification is only a declaration by the Board that the union no longer represents a majority of the employees. A decertified union is not subject to governmental sanctions until it is found to have committed an unfair labor practice. Since unfair labor practice charges under 8(b)(7)(B)[8] depend on the existence of 'a valid election', and since a decertification election is not valid if the employer instigated it, the Board must hear evidence on instigation before it issues a cease and desist order under 8(b)(7)(B). National Labor Relations Board v. Local 182, Internat'l Brotherhood of Teamsters, 314 F.2d 53 (2d Cir.1963). It is not clear that due process requires an earlier hearing.
 
 
 11
 The case is remanded to the District Court with directions to dismiss the complaint for lack of jurisdiction.
 
 
 12
 Remanded.
 
 BAZELON, Chief Judge (concurring):
 
 13
 I agree with Judge Edgerton that the Board's rule that employer instigation of a decertification petition may be litigated only in an unfair labor practice proceeding does not deprive appellant of an 'appropriate hearing' on whether a 'question of representation exists * * *.' 29 U.S.C. 159(c)(1) (1958). The Labor Act provides that the regional 'officer or employee' who holds initial hearings in representation proceedings 'shall not make any recommendation' on whether a question of representation exists. Ibid. In unfair labor practice proceedings, however, the hearing examiner does make findings and recommendations before the proceedings reach the Board. Because voluminous testimony is often involved in the employer instigation issue, and assessment of witness credibility may be crucial, the Board may properly find that it needs the hearing examiner's findings and recommendations, and that this issue is thus best litigated in unfair labor practice proceedings.
 
 
 14
 The Board here has called into question the union's representative status by directing an election. It has imposed this 'sanction' without affording an evidentiary hearing on the employer instigation issue. But the union, if it loses the election, is able to secure such hearing in an unfair labor practice proceeding[1] by picketing within the year after its loss, National Labor Relations Board v. Local 182, International Brotherhood of Teamsters, 314 F.2d 53, 59-61 (2d Cir. 1963). Since the union may thus protect its interest and since the Board's procedures here have a reasonable administrative justification, I think that judicial intervention under the narrow doctrine of Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180 (1958), is not appropriate. The policy must prevail that representation questions should be speedily resolved through the procedures chosen by the Board.
 
 WRIGHT, Circuit Judge (concurring):
 
 15
 I agree with the court that this case does not involve such a clear statutory violation as to come within the limited exception to the general rule of non-reviewability of representation proceedings. See Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180 (1958); Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); Local 130, International Union of Electrical, Radio & Machine Workers v. McCulloch, 120 U.S.App.D.C. , 345 F.2d 90 (1965); Boire v. Miami Herald Publishing Co., 5 Cir., 343 F.2d 17 (1965).
 
 
 16
 Neither has any violation of constitutional rights been shown.[1] The union contends that the Board violated the Due Process Clause by refusing to permit the union to show, during a hearing to determine whether a representation election should be held, that the employee petitions for decertification were instigated by the employer. It is true that employer instigation is relevant to whether a question of representation exists and, hence, under 61 STAT. 144, 29 U.S.C. 159(c)(1), to whether an election should be held. Sperry Gyroscope Co., Div. of Sperry Rand Corp., 136 NLRB 294 (1962).[2] But due process does not require that, before an election can be called to test the support a collective bargaining agent has among the members of the bargaining unit, the bargaining agent must have the opportunity to be heard on every issue relevant to whether a question of representations exists.
 
 
 17
 Although no case so holding has been found,[3] it may be assumed for the present discussion that the union's interest in remaining the collective bargaining agent of a bargaining unit in which it has majority support is an interest within the protection of the Due Process Clause. On this assumption, obviously, the procedures employed by the Board in depriving the union of its status must accord with due process. It is implicit in the concept of due process that where government action, which directly affects protected private interests, depends on findings of fact, the person whose interests are affected must be given an opportunity to disprove the evidence relied on by the government.[4] Thus, if the hearing would result in the Board's directly depriving the union of its bargaining status, I would think that prohibiting the union to argue an admittedly relevant issue would violate due process.[5]
 
 
 18
 But the Board's action following the hearing in this case did not directly result in depriving the union of its status (nor could it under the statute), but only in submitting that status to a vote of the employees in the bargaining unit. Thus, the finding that a question of representation existed was only a preliminary finding[6] and was not of decisional significance to the primary issue-- whether the union was in fact supported by a majority of the bargaining unit. This issue was left to be determined by a vote of the employees.
 
 
 19
 Constitutional limitations might prevent the Board from ordering an election arbitrarily,[7] but the refusal to hear the evidence proffered by the union in the circumstances of this case hardly amounts to arbitrary action.
 
 
 
 [1]
 Kansas Color Press, Inc., Decision and Direction of Election, n. 3, Case Nos. 17-RD-235, 17-RD-236, 17th Region, June 7, 1963
 
 
 [2]
 In proceedings to enforce or set aside an unfair labor practice order, a court of appeals may review the certification proceeding. 29 U.S.C. 159(d) (1958)
 
 
 [3]
 A mere allegation in the complaint that the Board has violated the Act does not confer jurisdiction. The violation must be proved
 
 
 [4]
 'Whether a question of representation exists is within that area of expertise in which courts hesitate to interfer.' Miami Newspaper Printing Pressmen's Union v. McCulloch, 116 U.S.App.D.C. 243, 248 n. 11, 322 F.2d 993, 998 n. 11 (1963)
 
 
 [5]
 Even an unreasonable departure from a rule of the Board is not reviewable by the District Court on the principle of Leedom v. Kyne unless the rule is expressly required by the Act. See McLeod v. Local 476, United Brotherhood of Industrial Workers, 288 F.2d 198, (2d Cir. 1961)
 
 
 [6]
 For a summary of legislative history see Leedom v. Kyne, 358 U.S. 184, 191, 79 S.Ct. 180 (1958) (Brennan, J., dissenting)
 
 
 [7]
 See, e.g., Milk and Ice Cream Drivers and Dairy Emp. Union, Local 98 v. McCulloch, 113 U.S.App.D.C. 156, 306 F.2d 763 (1962), and cases cited; Leedom v. Internat'l Brotherhood of Electrical Workers, 107 U.S.App.D.C. 357, 278 F.2d 237 (1960); Fay v. Douds, 172 F.2d 720 (2d Cir. 1949)
 
 
 [8]
 29 U.S.C. 158(b)(7)(B) (Supp. V, 1964) makes it an unfair labor practice for an uncertified union to picket an employer for organizational purposes within twelve months of a valid election. The Union has picketed Kansas Color Press, Inc. If an election were held in which the Union lost and was decertified and if the Union continued to picket, it would be subject to 8(b) (7)(B) charges
 
 
 [1]
 29 U.S.C. 158(b)(7)(B) (Supp. V, 1964)
 
 
 [1]
 The Fifth Circuit has recently expressed doubt as to whether a constitutional violation should be a separate ground for jurisdiction. Boire v. Miami Herald Publishing Co., supra, 343 F.2d p. 21, n. 7
 
 
 [2]
 The refusing to admit the evidence, the Board relied on its practice of refusing in representation proceedings to evaluate allegations of conduct constituting an unfair labor practice. See Union Manufacturing Company, 123 NLRB 1633 (1959). In this case the union's unfair labor practice charge, based on the alleged conduct of the employer, was dismissed by the Board's General Counsel
 
 
 [3]
 But see Inland Empire Dist. Council Lumber and Sawmill Workers Union, Lewiston, Idaho v. Millis, 325 U.S. 697, 65 S.Ct. 1316 (1945); Fay v. Douds, 2 Cir., 172 F.2d 720, 723 (1949)
 
 
 [4]
 Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)
 
 
 [5]
 If this were the case, the Board's decertification order would effectively determine the union's status. Therefore, the doctrine of Inland Empire Dist. Council Lumber and Sawmill Workers Union, Lewiston, Idaho v. Millis, supra Note 3, to the effect that a hearing at any time prior to final agency action is sufficient to satisfy due process, would not, in my opinion, remedy the procedural error
 
 
 [6]
 The decision of the Board to hold an election might be analogized to an administrative decision to commence proceedings. The preliminary decision is not the one by which a person is 'deprived of life, liberty, or property' within the meaning of the Fifth Amendment Due Process Clause, and, therefore, the Due Process Clause does not require a hearing prior to the preliminary decisions. Ewing v. Mytinger & Casselberry, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950)
 
 
 [7]
 See Ewing v. Mytinger & Casselberry, supra Note 6, 339 U.S. at 604-605, 70 S.Ct. 870 (dissenting opinion of Mr. Justice Jackson); Leedom v. International Brotherhood of Electrical Workers, 107 U.S.App.D.C. 357, 363, 278 F.2d 237, 243 (1960)