UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION LOCAL NO. 576, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 80–2254.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 21, 1981.

Decided April 2, 1982.

Beth Shulman, Washington, D. C., for petitioner. George R. Murphy, Benson, N. C., Robert E. Funk, Jr., Kansas City, Kan., and Robert L. Kimbrough, Topeka, Kan., were on the brief, for petitioner.

Steven M. Fetter, Atty., N. L. R. B., of the Bar of the Supreme Court of New York, Pro Hac Vice by special leave of Court, Washington, D. C., with whom Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., was on the brief, for respondent. Paul Spielberg, Atty., N. L. R. B., Washington, D. C., also entered an appearance for respondent.

Before TAMM, Circuit Judge, McGOW-AN, Senior Circuit Judge and BRYANT *, Senior District Court Judge for the District of Columbia Circuit.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

McGOWAN, Senior Circuit Judge:

This direct review of a National Labor Relations Board finding of an unfair labor practice by a picketing union presents the question of whether the Board erred in refusing to entertain a defense based upon evidence that the General Counsel had previously considered in refusing, at the union's request, to issue an unfair labor practice complaint against the employer. For the reasons hereinafter appearing, and by reference to the precise circumstances of

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

this case, we hold that the Board's action did not give the union the opportunity to defend itself contemplated by the National Labor Relations Act.

## I

United Food and Commercial Workers International Union ("Union") petitions for review, and the National Labor Relations Board ("Board") cross-petitions for enforcement, of a Board order finding that the Union engaged in recognitional picketing in violation of section 8(b)(7)(C) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(b)(7)(C) (1976), and ordering the Union to cease and desist from that activity. In the unfair labor practice proceeding that led to the challenged order, the Union sought to introduce evidence that the picketed employer was in reality an alter ego of, a joint employer with, or a successor of another employer with whom the Union had a collective bargaining agreement covering the employees in question. This showing, the Union contended, would form a complete defense to the complaint, because recognitional picketing is permissible if the picketing union "is currently certified as the representative" of the picketed employer's employees. *Id.* § 158(b)(7).

An administrative law judge ("ALJ") refused to hear evidence on, or otherwise consider, this defense because the Union had earlier filed an unfair labor practice charge, dismissed by the General Counsel for insufficient evidence, advancing the same alter ego and joint employer theories. Repeating what he considered to be a firmly settled Board position, the ALJ stated that admitting the evidence would violate the General Counsel's "final authority" under section 3(d) of the Act, 29 U.S.C. § 153(d) (1976), "in respect of the investigation of charges and issuance of complaints." Two members of a three-member Board panel agreed with this reasoning and adopted in full the ALJ's decision and order. Chairman Fanning dissented, however, arguing that under the Act the Union had to be given the chance to present its defense, and that hearing the defense would not encroach on the General Counsel's authority.

The Union's arguments on appeal echo the views of Chairman Fanning, and include also the contention that the exclusion violated the due process guarantees of the Constitution. We need not discuss the latter point because we conclude that the exclusion contravened basic requirements of the Act itself. Accordingly, we set aside the Board's order and remand to allow the Union a chance to make its defense.

## II

At the time of the relevant events, the Union was the incumbent collective bargaining representative of the meat department employees of George Muelbach & Sons, Inc. ("Muelbach"). The collective bargaining agreement covered Muelbach employees at three locations, and was due to expire on April 5, 1980. Sometime in early 1979, Muelbach learned that its lease at one store location would not be renewed after the lease's termination on January 31, 1980. Around March 1979, R & F Grocers, Inc., was established and began operating a grocery store, known as "Muelbach West," near the location of the store whose lease was set to expire. R & F was primarily owned and operated by two sons of the principal owner of Muelbach.

On May 30, 1979, the Union filed an unfair labor practice charge against "George F. Muelbach & Sons Super Markets and its alter ego and/or joint employer R & F Grocery, Inc. d/b/a Muelbach West," J.A. 74, alleging violations of sections 8(a)(1), 8(a)(3), and 8(a)(5) of the Act, 29 U.S.C. §§ 158(a)(1), 158(a)(3), 158(a)(5) (1976). The common thread to all the charges was the Union's view that R & F was merely an alter ego of, or joint employer with, Muelbach, and therefore was obligated to abide by the terms of the existing bargaining agreement between the Union and Muelbach.

The acting regional director dismissed the charge on July 6, 1979, J.A. 75, and the Union appealed to the Board's Office of Appeals. By letter dated October 12, 1979,

the General Counsel denied the appeal, explaining that "it could not be established that Muelbach West is an alter ego or joint employer with Respondent." J.A. 78. Because the General Counsel's decision is not a judicially reviewable one, the Union's effort to initiate an unfair labor practice proceeding was at an end.

The Union, however, then began to picket R & F on January 7, 1980. In response, R & F filed on February 6, 1980, J.A. 3, an unfair labor practice charge alleging a violation of section 8(b)(7)(C), 29 U.S.C. § 158(b)(7)(C) (1976),[1] which prohibits a union from engaging in what is commonly known as "recognitional picketing" when the union has not filed an election petition within a reasonable period of time, not to exceed thirty days, from the start of the picketing. The acting regional director issued a complaint on the charge, and noticed a hearing to begin on March 20, 1980. J.A. 4.

At that hearing, the parties did not dispute the presence of several key elements of a section 8(b)(7)(C) violation. The picketing had lasted more than thirty days, no election petition had been filed, and the Union admitted that an object of the picketing was "forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees," 29 U.S.C. § 158(b)(7) (1976). No violation of section 8(b)(7)(C) occurs, however, if the union is picketing for continued recognition, ALJ Decision, J.A. 18, or is "currently certified as the representative of [the picketed employer's] employees," 29 U.S.C. § 158(b)(7) (1976), and upon these conditions the Union based its defense. Arguing that R & F was merely an alter ego of or joint employer with Muelbach, the Union reasoned that its position as the bargaining representative of Muelbach employees also gave it status as the certified representative of R & F employees.[2]

Counsel for the General Counsel moved to strike the defense and prevent the Union from introducing any evidence in support of it. The Union, argued the General Counsel, had advanced the same theory in the charge filed against R & F, and the General Counsel had dismissed that charge for insufficient evidence; the Union, so it was said, could not resurrect the contention in the unfair labor practice proceeding brought against itself. Transcript, J.A. 42–43. The ALJ concluded that Board precedent accorded with the General Counsel's position, and therefore barred the Union's defense. *Id.*, J.A. 52–54.

1. The section provides:
    It shall be an unfair labor practice for a labor organization or its agents—
    . . . .
    (b) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:
    . . . .
    (C) Where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided,* That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c)(1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further,* That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.
    29 U.S.C. § 158(b)(7)(C) (1976).

2. The transcript of the hearing suggests that the Union was primarily advancing the certification defense. *See* Transcript, J.A. 47. The ALJ, however, analyzed the Union's alter ego, joint employer, and successorship allegations under both the certification and incumbency rationales, apparently viewing both as potential defenses to a section 8(b)(7)(C) charge. *See* pages 349–350 and note 3 *infra.*

The ALJ's decision discussed how the Union's evidence could have related to proof of a section 8(b)(7)(C) violation. First, he observed that an incumbent union can lawfully picket for continued recognition; the section proscribes only picketing that seeks to force an employer's initial recognition of a union. If R & F were shown to be merely a continuance of Muelbach, thought the ALJ, the Union perhaps could avail itself of this incumbency rationale. ALJ Decision, J.A. 18. Second, the ALJ noted that the Union was trying to disprove an element essential to any section 8(b)(7) violation, namely, the requirement that the picketing union not be "currently certified as the representative of such employees." *Id.*, J.A. 19. Although the ALJ did not rule that the Union would have succeeded [3] on either theory, he apparently thought that both rationales were potential defenses to a section 8(b)(7)(C) charge.[4]

The ALJ nonetheless refused to consider the Union's evidence or arguments because the General Counsel had earlier dismissed the Union's charges presenting those contentions. Admission of the defense, according to Board precedent, would violate the General Counsel's "final authority," under section 3(d) of the Act, 29 U.S.C. § 153(d) (1976), "in respect of the investigation of charges and issuance of complaints." The ALJ therefore found that the Union had violated section 8(b)(7)(C), and issued a decision and a recommended cease and desist order on June 2, 1980. After considering the Union's exceptions to the ALJ's decision, two members of a three-member Board panel affirmed his findings, rulings, and conclusions, and adopted his recommended order. Board Decision, J.A. 31–32. Chairman Fanning dissented, however, arguing that admission of the defense was

---

**3.** The ALJ questioned whether the Union could succeed on the second rationale, because when offered the chance the Union had been unable to produce proof that it was the certified representative of Muelbach employees. ALJ Decision, J.A. 13 n.2. This absence of proof, in the ALJ's view, was evidence that the Union had never been so certified. The ALJ did not, however, rule that the certification defense was unavailable to the Union; he thought the issue "not material," *id.*, because the Union, as the incumbent representative, could employ the first rationale if allowed to present its alter ego, joint employer, and successorship theories.

**4.** The ALJ also considered whether the Union's showing, if viewed as an allegation that the employer had committed unfair labor practices, could form a defense to the section 8(b)(7)(C) charge. He read the Board's decision in International Hod Carriers Building and Common Laborers Union (Blinne Construction Co.), 135 N.L.R.B. 1153 (1962) (supplemental decision and order), to mean that such a defense would be unsuccessful even if the Union's evidence were admitted. We agree with this conclusion, and, as we will explain, our decision does not affect the *Blinne* rule.

The union in *Blinne*, charged with picketing in violation of section 8(b)(7)(C), argued that the employer's unfair labor practices excused the union's failure to file the required election petition and therefore formed a defense to the charge. The union supported its defensive theory by reasoning that Congress would not have wanted the filing requirement of section 8(b)(7)(C) to force the union's participation in

an election tainted by the employer's unfair labor practice. *Id.* at 1161.

The Board held that allegations of unfair labor practices do not excuse the filing of an election petition. Recognizing, however, that a union should not have to consent to a tainted election, the Board held that a union alleging an unfair labor practice should also file a charge to that effect, and that upon the filing of such a charge the election will be held in abeyance pending resolution of the charge. *Id.* at 1165–66. In other words, charges of unfair labor practices (other than violations of section 8(b)(5), *see id.* at 1166 n.24) do not excuse a failure to file the required election petition, and therefore are not defenses to a section 8(b)(7)(C) charge.

In the proceeding on review, the Union was not relying on a *Blinne*-type defense. Although the alter ego theory it attempted to introduce had earlier been the basis of an unfair labor practice charge, the Union was not, as was the union in *Blinne*, admitting a *prima facie* violation of section 8(b)(7)(C) and then defending that violation by alleging employer unfair labor practices. Rather, the Union was trying to prove that the elements of a section 8(b)(7)(C) violation did not exist. *See* Petitioner's Br. at 12 n.5; Transcript, J.A. 47.

The ALJ recognized this difference; he addressed the *Blinne* rule but then went on to consider separately the defenses on which the Union relied. He correctly noted that the Union's proffer would fail if viewed as a *Blinne*-type defense, but, as we have explained, he considered the Union's defensive rationales to be potentially meritorious.

"imperative" under the Act and would not impinge on the General Counsel's authority. *Id.*, J.A. 33 (Fanning, Chairman, dissenting). The Union then filed a petition for review in this court on October 10, 1980, and the Board filed a cross-petition for enforcement on December 9, 1980.

### III

The Union does not ask this court to rule its defense meritorious or to relieve it from liability under section 8(b)(7)(C). It asks only for the opportunity to present the defense to the Board and receive a determination by the Board on its validity; in essence, it seeks a hearing on the defense. This court should direct the Board to grant a hearing, argues the Union, because the Board based its refusal to do so on an erroneous rationale, and because both the Act and the due process guarantees of the Constitution require that result.

In excluding the defense, the Board purported to follow a rule first set out in *Times Square Stores, Corp.*, 79 N.L.R.B. 361 (1948), and followed by the Board ever since in a variety of proceedings. *Times Square* was a representation proceeding under section 9 of the Act, 29 U.S.C. § 159 (1976), in which the Board considered a union's objections to an election that had resulted in the certification of a rival union as the exclusive bargaining representative. The Board, which is responsible for determining the validity of election results under section 9, acknowledged that central to the validity of the challenged election was whether the employer had committed certain unfair labor practices. The Board nonetheless thought itself powerless to make this inquiry, because the General Counsel had earlier dismissed charges filed by the union alleging those same practices. 79 N.L.R.B. at 364–65. Subsequently the Board extended *Times Square* beyond section 9 proceedings to exclude also defenses raised in unfair labor practice proceedings under sec-

tion 8 of the Act, 29 U.S.C. § 158 (1976). *Local 295, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers (Calderon Trucking Corp.)*, 178 N.L.R.B. 52 (1969); *Service Employees' International Union (Children's Rehabilitation Center, Inc.)*, 211 N.L.R.B. 982 (1974). The proceeding on review represents the application of *Times Square* to exclude a defense in a section 8(b)(7)(C) proceeding. We must determine the validity of that application, not of the *Times Square* holding itself.[5]

█ Although such a longstanding interpretation by the agency entrusted with the Act's administration must be given careful consideration by a reviewing court, courts "are the final authorities on issues of statutory construction." *Federal Election Commission v. Democratic Senatorial Campaign Committee*, —— U.S. ——, ——, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981). In that role, we must "reject administrative constructions of the statute . . . that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement." *Id.; see NLRB v. Yeshiva University*, 444 U.S. 672, 691, 100 S.Ct. 856, 867, 63 L.Ed.2d 115 (1980). The Board's exclusion of the evidence in issue is permissible only if that action represents an "acceptable reading of the statutory language and a reasonable implementation of the purposes of the relevant statutory sections." *NLRB v. Local Union No. 103*, 434 U.S. 335, 341, 98 S.Ct. 651, 655, 54 L.Ed.2d 586 (1978).

█ We conclude that the Act cannot reasonably be read to allow the exclusion of the Union's asserted defense in the section 8(b)(7)(C) proceeding. As we explain more fully below, the Board has tried to avoid infringement or review of the General Counsel's decision without regard to other features of the Act that call for the admission of the Union's defense. These provisions, coupled with the attenuated nature of

---

5. No court has squarely faced the issue in this case, but our result finds support in several courts' comments about the need to admit relevant defenses in a section 8(b)(7)(B) proceeding. *See Lawrence Typographical Union v. McCulloch*, 349 F.2d 704, 708 (D.C.Cir.1965); *id.* at 709 (Wright, J., concurring); *NLRB v. Local 182*, 314 F.2d 53, 60–61 (2d Cir. 1963). These cases are discussed, respectively, at note 11 and page 356 *infra*.

any resulting interference with the General Counsel's authority, make clear that the Board erred in applying the *Times Square* doctrine in the proceeding on review.[6]

Because the Board's arguments center on its interpretation of the General Counsel's authority under the Act, we should begin with a general description of that authority. We will then take up our consideration of the Board's reasons for the exclusion, and explain why under our reading of the Act the Union must receive a hearing on its tendered defense.

### A.

The Act sets forth a detailed scheme for enforcing its proscription of unfair labor practices. Central to that scheme is the bifurcation of authority between the General Counsel and the Board. The General Counsel, appointed by the President with the advice and consent of the Senate, has "final authority, on behalf of the Board, in respect of the investigation of charges and issuance of complaints before the Board. . . ." Act § 3(d), 29 U.S.C. § 153(d) (1976). In carrying out this function, the General Counsel exercises general supervision over all officers and employees in the regional offices, and all attorneys employed by the Board other than trial examiners or legal assistants to Board members. *Id.* The Board, whose five members are appointed by the President with the advice and consent of the Senate, has responsibility for hearing and adjudicating unfair labor practice charges, and for issuing cease and desist orders with respect to those charges. *See id.* § 160.

**6.** Our holding relates only to unfair labor practice proceedings. *Times Square* itself concerned a representation hearing under section 9, and the Board has continued to apply the doctrine in such settings as well as in unfair labor practice proceedings. Because the "appropriate hearing" required under section 9, 29 U.S.C. § 159(c)(1) (1976), differs from the hearing required upon the issuance of an unfair labor practice complaint, this court has held that application of *Times Square* in a section 9 proceeding violates neither the Constitution nor any clear provision of the Act. *Lawrence*

Only a private party's filing of an unfair labor practice charge can set in motion the Act's enforcement procedures. According to Board regulations, after a charge is filed in the regional office, a member of the office's field staff is to undertake an investigation of the charge. 29 C.F.R. § 101.4 (1981). The regional director, however, "in his discretion" may dispense with any portion of the investigation if he considers that action to be necessary in light of such factors as the time required, the nature of the proceeding, and the public interest. *Id.*

If the investigation reveals that no violation of the Act has occurred, or if the evidence is insufficient to substantiate the charge, the regional director recommends that the complainant withdraw the charge. *Id.* § 101.5. If the complainant disagrees with this recommendation, the regional director dismisses the charge, informing the complainant of his right to appeal within ten days to the General Counsel in Washington, D. C. On appeal, the case is "fully reviewed by the general counsel with the assistance of his staff," *id.* § 101.6, and a party may request and receive an opportunity for oral argument. The General Counsel then either sustains the dismissal or orders the regional director to take further action. *Id.* Neither the Board nor the courts may review a decision by the General Counsel not to issue a complaint. If a complaint does issue, it becomes the Board's responsibility to hear and adjudicate the complaint in an unfair labor practice proceeding. 29 U.S.C. § 160(a)–(c) (1976).

### B.

■ Two rationales underlie the Board's refusal to hear the Union's defense.[7] First,

*Typographical Union v. McCulloch*, 349 F.2d 704, 707–08 (D.C.Cir.1965).

**7.** The Board's brief also contains language suggesting a reliance on res judicata principles. For example, the Board argues that a party who fails to prove even the need for a complaint should not have a second chance to make its case to the Board or to the courts: "Having failed to provide sufficient evidentiary support for its Section 8(a) charge . . ., the Union was not privileged to litigate the subject matter of the charge in the later Section

the Board thinks that admission would constitute an interference by the Board with the General Counsel's "final authority," under section 3(d), "in respect of the investigation of charges and issuance of complaints."[8] The Board, understandably, wishes to respect the separation of authority between the Board and the General Counsel, a bifurcation effected by the Taft-Hartley amendments of 1947 and thought to be an essential condition to fair and unbiased prosecution of unfair labor practices. *See* H.R. Rep. No. 245, 80th Cong., 1st Sess. 6 (1947), *reprinted at* I NLRB, Legislative History of the Labor Management Relations Act, 1947, at 292, 297 (1948) (House bill); *International Union of Electrical, Radio and Machine Workers v. NLRB*, 289 F.2d 757, 761 (D.C.Cir.1960). The Conference Report spoke of the General Counsel's need for "final authority to act in the name of, but independently of any direction, control, or review by, the Board in respect of the investigation of charges and issuance of complaints ...." H.R. Rep. No. 510, 80th Cong., 1st Sess. 37 (1947), *reprinted at* I NLRB, Legislative History of the Labor Management Relations Act, 1947, at 505, 541 (1948). Apparently the Board fears that hearing, and possibly accepting, allegations which the General Counsel has dismissed as insufficient cause for complaint represents a form of influence or control over the General Counsel's decision.

We share Chairman Fanning's doubts that this fear is warranted. Dissenting from the decision on review, he alluded to his earlier dissent in a similar case, Board Decision, J.A. 33–34, where he argued, "I do not think our inquiry into the validity of the election here is in derogation of the General Counsel's powers under Section 3(d) to investigate charges and issue complaints. Our inquiry could not, of course, cause the General Counsel to reconsider any decision he may have made on the disposition of any charges that may have been filed ...." *Service Employees' International Union (Children's Rehabilitation Center, Inc.)*, 211 N.L.R.B. 982, 983 (1974) (Fanning, Member, dissenting). Neither would the Board's hearing the defense work indirect control over the General Counsel's discretion. Given the essential differences between an investigation into a charge and an adjudicatory hearing of an unfair labor practice complaint issued by the General Counsel,[9] a Board decision inconsistent with the General Counsel's earlier dismissal would not necessarily represent a negative comment on or indirect command to the General Counsel.

■ The Board finds a second rationale in the fact that the General Counsel's dismissal of a charge is not subject to judicial review. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138–39, 95 S.Ct. 1504, 1510–11, 44 L.Ed.2d 29 (1975); *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d

---

8(b)(7)(C) proceeding." Respondent's Br. at 17. Res judicata concepts, however, cannot support the Board's practice. Although the General Counsel's decision to dismiss represents an estimate of the merits of the charge and operates to foreclose Board consideration of that charge, it is not a decision on the merits with res judicata effect. *See Peltzman v. Central Gulf Lines, Inc.*, 497 F.2d 332, 334 (2d Cir. 1974); *Aircraft & Engine Maintenance & Overhaul v. I. E. Schilling Co.*, 340 F.2d 286, 289 (5th Cir. 1965), *cert. denied*, 382 U.S. 972, 86 S.Ct. 528, 15 L.Ed.2d 464 (1966).

Our decision, therefore, does not bear upon the res judicata principles that the Board and courts employ to bar relitigation in unfair labor practice proceedings of issues heard in representation proceedings. *See* 29 C.F.R. § 102.-67(f) (1981); *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251

(1941); *NLRB v. Mar Salle, Inc.*, 425 F.2d 566 (D.C.Cir.1970).

**8.** Repeating an often-cited passage from *Times Square*, the ALJ said that exclusion was necessary to avoid the Board's acting " 'in practice as a forum for considering the content of charges which the General Counsel, for reasons satisfactory to himself, has thought it proper to dismiss.' " ALJ Decision, J.A. 19, *quoting* 79 N.L.R.B. at 365.

**9.** Board regulations state that the regional director "may in his discretion dispense with any portion of the investigation described in this section as appears necessary to him in consideration of such factors as the amount of time necessary to complete a full investigation, the nature of the proceeding, and the public interest." 29 C.F.R. § 101.4 (1981).

842 (1967). This rule requires the exclusion of the evidence proffered in this case, the Board thinks, because in its view the Union's tactic was merely an attempt to obtain indirectly the review unavailable to it when the General Counsel dismissed the charge. We see in this characterization two possible arguments against our review.

The first is a general proposition that a matter which is not reviewable in one type of labor proceeding cannot become reviewable in another. But well-settled rules respecting Board election determinations defeat this broad principle. Board decisions in section 9 proceedings, such as certification of a union, are not subject to direct judicial review under section 10(f), 29 U.S.C. § 160(f) (1976). *International Union of Electrical, Radio and Machine Workers v. NLRB*, 434 F.2d 473, 482 (D.C.Cir.1970). An employer who objects to that certification, however, can obtain judicial review by refusing to bargain with the union and thereby subjecting himself·to charges under section 8(b)(5), 29 U.S.C. § 158(b)(5) (1976). The record of the section 9 proceeding then becomes part of the record in the unfair labor practice proceeding, which in turn is subject to judicial review. *See* 29 U,S.C. § 159(d) (1976).

A second, less general argument presented by the Board's characterization is that our review of a record that includes the Union's defense would essentially be review of the General Counsel's earlier decision, a review proscribed by long-established judicial constructions of the Act. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138–39, 95 S.Ct. 1504, 1510–11, 44 L.Ed.2d 29 (1975); *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967). It is true that the defense, if admitted, would form part of a record reviewable by us, but this is not tantamount to judicial review of the General Counsel's decision; we could not reverse that decision or require any further action of the General Counsel.

The Board's own rationales, therefore, lend only weak and inconclusive support to its view that the Act bars the Union's defense. Because admission of the defense would not expose the General Counsel's decision to direct review by either the Board or the courts, the exclusion finds justification, if at all, only in the need to avoid indirect effects on the General Counsel's discretion.

## IV

The Board's more fundamental error lies not in its overestimate of interference with the General Counsel's authority, but in its inattention to other provisions of the Act that call for admission of the Union's defense: (1) the charged party's right to a full hearing on its defense, and (2) the Board's authority to hear and adjudicate unfair labor practice complaints. A detail of these elements will make clear that, despite the Board's fears of interference, the only reasonable construction of the Act is to require the admission of the Union's defense.

### A.

■ A party subject to an unfair labor practice complaint has a right to a hearing; the required hearing is formal and trial-like in nature.[10] "The person so complained of shall have the right to file an answer to the original or amended complaint or otherwise and to give testimony at the place/time fixed in the complaint." 29 U.S.C. § 160(b) (1976). The Board or a member, agency, or agent may conduct the hearing. Nothing in the Act allows the Board discretion to deny or limit this "right to file an answer ... and to give testimony." Rather, "so far as is practicable," the Board, member, agent, or agency must conduct the hearing "in accordance with the rules of evidence applicable in the district courts of the United States." *Id.* The Board has "discretion" to allow or disallow further testimony only after an agent, agency, or member has com-

10. Although we analyze the hearing issue in terms of the Act's requirements, it is clear that a party's right to a hearing in an unfair labor practice proceeding is also grounded in the due process guarantees of the Constitution. *See Lawrence Typographical Union v. McCulloch*, 349 F.2d 704, 708 (D.C.Cir.1965).

pleted the initial taking of testimony and has filed it with the Board. *Id.* § 160(c). This discretion, then, does not free the Board to limit the respondent's initial "right to appear ... and to give testimony." Board regulations add more detail to this picture of a required trial-like hearing. An administrative law judge presides over the hearing, and all parties to the proceeding may introduce evidence and call, examine, and cross-examine witnesses. 29 C.F.R. § 101.10(a) (1981).

The Board saw in the exclusion no violation of this right to a hearing because, in the ALJ's words, the General Counsel "has final authority to decide whether [the Union] can obtain such a hearing, through the mechanism of the General Counsel's authority to decide whether complaints should issue as a result of charges that are filed." ALJ Decision, J.A. 19. But the broad power so ascribed to the General Counsel's authority to decide whether to issue a complaint conflicts fundamentally with the requirement of a hearing before the Board when a complaint has issued. The Board's conclusion is not even arguably valid unless the General Counsel's consideration and investigation of the earlier charge can somehow be said to constitute the required hearing.

As Board regulations make clear, however, the scope of the General Counsel's investigatory inquiry does not approach that of the required hearing. A charging party may submit evidence to the General Counsel in support of the charge, but the conduct of any ensuing investigation is in the General Counsel's hands. A member of the field staff takes such interviews as are "deemed necessary," and the regional director "may in his discretion dispense with any portion of the investigation described in this section as appears necessary to him in consideration of such factors as the amount of time necessary to complete a full investigation, the nature of the proceeding, and the public interest." 29 C.F.R. § 101.4 (1981). This more limited and discretionary inquiry, though appropriate at the investigatory stage, is no substitute for the hearing necessary under the Act for a party faced with an unfair labor practice complaint. In addition, the party has a right to a hearing before the Board, a different decisional body than the General Counsel.

The ALJ also supported the denial of a hearing by pointing to what he considered an analogous Board practice in representation proceedings under section 9 of the Act. The Board does not allow litigation of unfair labor practice allegations in these proceedings, even though the commission of such practices justifies setting aside the election. This rule, however, does not support the Board's exclusion in the instant case, because the "appropriate hearing," 29 U.S.C. § 159(c)(1) (1976), required in section 9 proceedings differs from the hearing required in unfair labor practice proceedings.[11]

### B.

The exclusion of evidence also conflicts with the Board's authority under the Act to adjudicate unfair labor practice complaints. Its exercise of that authority, of course, is governed by the definitions of unfair labor practices set forth in the Act. In considering itself foreclosed from hearing a defense based upon an express statutory condition, the Board imposed on itself an erroneous constraint. The possibility of indirect inter-

---

11. A decision of this court makes this point clear. In *Lawrence Typographical Union v. McCulloch,* 349 F.2d 704 (D.C.Cir.1965), the court upheld the Board's decision not to hear, in a section 9 proceeding, relevant evidence of the employer's unlawful instigation of an election resulting in the union's decertification. "The Act does not say the Board must hear evidence of employer instigation. Congress intended the Board to establish, in its discretion, criteria for determining whether a question of representation exists." *Id.* at 707. The court emphasized, however, that if the decertified union were later charged with an unfair labor practice, the Board would have to admit the same evidence that it had permissibly excluded in the representation proceeding. "Since unfair labor practice charges under § 8(b)(7)(B) depend on the existence of a 'valid election,' and since a decertification election is not valid if the employer instigated it, the Board must hear evidence on instigation before it issues a cease and desist order under § 8(b)(7)(B)." *Id.* at 708 (footnote omitted).

ference with the General Counsel's authority does not justify such a serious limitation on the Board's ability to carry out its own responsibility to adjudicate complaints issued by the General Counsel.[12]

The Second Circuit reached a similar conclusion in *NLRB v. Local 182*, 314 F.2d 53 (2nd Cir. 1963), reviewing a Board finding that a union had violated section 8(b)(7)(B), 29 U.S.C. § 158(b)(7)(B) (1976), which prohibits recognitional picketing "within twelve months of a valid election." The union had tried to defend in the unfair labor practice proceeding on the ground that the election had not been "valid" because the employer had committed unfair labor practices. Prior to the election, however, the union had filed charges, dismissed by the General Counsel, alleging those same unfair practices. The Board therefore applied its *Times Square* doctrine in the unfair labor practice proceeding to exclude the union's defense of invalidity. Judge Friendly's opinion stated that the General Counsel's dismissal could not bar the Board's consideration of the election's validity. Because a valid election is an express statutory condition to a finding of a section 8(b)(7)(B) violation, all questions relating to the validity of the election, the court held, are open to the Board and judicial review.[13] 314 F.2d at 60.

### V

We agree with Chairman Fanning's reading of the Act. The Board's refusal to hear

the Union's defense represented an unreasonable and insupportable construction of the Act. We direct the Board to reopen the section 8(b)(7)(C) proceeding and to hear the Union's defense, including the evidence tendered in this case in support of that defense.

*It is so ordered.*

---

**12.** The Ninth Circuit elaborated on the need to preserve the Board's authority in *Frito Co. v. NLRB*, 330 F.2d 458, 463–64 (9th Cir. 1964):

It is now well settled that the General Counsel's decision to investigate a charge or issue a complaint is unreviewable by the Board. However, once the decision has been made to issue a complaint and to prosecute it, the General Counsel has embarked upon the judicial process which is reserved to the Board. If the General Counsel can control this process, then the General Counsel can indeed usurp the Board's responsibility for establishing policy under the Act by simply withholding from the Board any issue which might precipitate a meaningful policy decision not in accord with the views of the General Counsel.

**13.** The court nevertheless granted enforcement of the Board's order because in the unfair labor

practice proceeding the union had proved only that it had filed charges with the General Counsel; it had not offered "something to indicate that [the dismissal] was wrong . . . and that unfair labor practices in fact prevented a fair election." 314 F.2d at 61. In the proceeding on review, the Union filed an offer of proof after the ALJ struck its defense. Transcript, J.A. 54–55, 64–65. In his brief, Respondent's Br. at 17, and at oral argument, counsel for the Board suggested that the Board, in reviewing the record on appeal, considered the offer of proof and found the proffered evidence insufficient to defend against the charge. Our reading of the record reveals no such consideration. The Union came forward with evidence, but the ALJ and the Board barred its introduction into the record on which they based their decisions.